<pre>                UNITED STATES DISTRICT COURT
                WESTERN DISTRICT OF MINNESOTA
                         AT TACOMA
</pre>

_____

| | |
|---|---|
| Alaa Elkharwily, M.D., | **No. 3:15-cv-05579-kls** |
| Plaintiff, | |
| v. | **PROPOSED SECOND AMENDED COMPLAINT** |
| Franciscan Health System, Health System, | |
| Defendants. | |

_____

To: The Court above named and to Defendant's attorneys of record

    For my second amended complaint against Defendant, I state as follows:

**General – Applies to All Counts**

1. I am a physician licensed to practice in the State of Washington.

2. Defendant is a Washington non-profit corporation that operated a hospital (St. Joseph) in Tacoma, WA. .

3. In 2013 I was offered employment as a physician by Group Health in Tacoma WA. The job would have paid me $220,000 per year for ten shifts a month, plus extra shifts, plus benefits.

4. My employment by Group Health was contingent upon my being granted privileges to practice medicine in Defendant's hospital (St. Joseph) in Tacoma.

5. In effect, Defendant was equally in control of whether or not I was hired by Group Health through its decision to grant or deny my application for privileges, in that respect was a co-employer.

6. With privileges at Defendant's hospital I would have also worked as a hospitalist at Defendant's hospital and received additional income from Defendant.

7. I applied for privileges at Defendant's hospital in Tacoma, and on or about August 2nd, 2012, Defendant granted me temporary privileges.

8. On or about August 9, 2012, Defendant withdrew and or revoked my temporary privileges and on July 25, 2103 it denied my application for privileges and membership of active staff membership.   **Plaintiff further states:**

- **Dr Deleon direct statement to Plaintiff " Your  mental illness is  a red flag" such statement was made right before revoking the temporary privileges and repeated during the meeting and afterwards.**
- **Despite almost the identical process of privilege application of both Group Health and Franciscan , they reached different decisions regarding plaintiff application.**
- **Similarly situated non disabled, non brown, non Muslim, not from Egypt physicians applications for privileges were granted per Dr Deleon and Other staff members and per Group health staff members.**
- **Dr. Dempster of Group Health reported to Plaintiff that Dr Hoftel told him "you should watch what type of people you are bringing to work at the hospital" referring to ethnicity, creed and religion when Dr Dempster questioned the reasons for revoking privileges and that Franciscan is discriminating.**
- **During and before the appeal panel a board member, Dr Cameroni, attested to the concerns and fear of the committee members (and himself) to hire Plaintiff based on assumption  that plaintiff would not be able to do the job because of disability. Defendant even denied and resisted offering plaintiff proctor ship as a solution to mitigate any concern because of his disability.**
- **Revoking Plaintiffs' privileges was decided to be "premature"  and unsubstantiated by a three member hearing panel. However, the decision was still overturned by the MEC only and yet for other different and unsubstantiated reasons. When Dr Deleon was asked about those new requirements that were not part of the process or application he claimed if this specific requirement was satisfied from the beginning it would have changed everything and privileges would not have been revoked or denied. The new requirement was to talk with medical director directly at Mayo Clinic to evaluate "mental illness implication on work" and to verify my complaints about fraud and false claim acts.**

- **The only evidence Defendant had was that Plaintiff was competent and capable of doing his job and duties and was qualified – from Mayo coworkers and superiors, and professors, University of Washington professors and associates, Group Health colleagues and staff, and treating physicians, States Licensure's, NPDB, and etc.School of Medicine and Residency program, and monitoring programs WPHP, HPSP..etc. Defendant's statements and actions , however ,were always based on mere discriminating assumptions and pre textual reasons.**

9. As a result of Defendant's denial of my application for privileges, I have lost and continue to lose income and benefits.

   **COUNT I – Defamation**

10. On or after July 25, 2013, denied privileges and Defendant stated in writing to the National Physicians Data Bank and Group Health and my Colleagues in Group Health that it had denied my application for privileges because of my "failure to demonstrate the scope and adequacy of his experience or his current clinical skill and competence for active medical staff membership and privileges."

11. Defendant's statement is available for review by any health care provider to whom I apply for employment.

12. Denying privileges is defamatory by itself among hospital staff and Group Health colleagues. It is defamatory to staff and Group Health colleagues and it is defamatory by implication that I was incompetent or made a serious error or engaged in misconduct.

13. It is mandatory for me to disclose and self publish **denial of** my privileges and or Defendant's statement in any and all future applications to future employers, health organizations and State Boards which I have done and because of which employment

were denied and investigations by the state Boards were conducted such as MN and Washington State Boards.

14. Defendant denied privileged and made its statement with malice and bad faith because:

    <u>a</u>. all information that Defendant had, **<u>including from Mayo coworkers and superiors, professors, University of Washington professors and associates, Group Health colleagues and staff, and treating physicians, States Licensure's, NPDB, School of Medicine and Residency program, and monitoring programs of WPHP, HPSP</u>** was that I was competent, **<u>therefore Defendant knew its statement was false,</u>**

    **<u>b. Defendant did not make a decision about my competency, as it has admitted in a filing in this Court, therefore Defendant knew its statement was false,</u>**

    <u>c</u>. Defendant was not obligated to make the report to the Data Bank,

    **<u>d. Defendant's report to the NPDB and others was gratuitous and not required by governing statutes, regulations or law,</u>**

    **<u>e. Defendant was motivated to deny me privileges by my race, creed, national origin, color and my disability, and</u>**

    <u>f.</u> I warned Defendant that it would cause irreparable damage and or harm.

15. In context, Defendant's statement means that I was an incompetent physician.

16. The literal statement and its meaning in context was false and defamatory.

17. As a result of Defendant's statement alleged herein, I have suffered irreparable damage to my reputation and have been denied employment, for example by Providence Health, Alliance and others, and this has resulted in lost income and

earning capacity, as well as past humiliation and I continue to suffer humiliation and embarrassment and emotional distress and loss of enjoyment of life..

**COUNT II – Washington Human Rights Act**

18. My national origin is Egypt, my creed is Muslim, my race is Arab, and my color is brown, all of which Defendant knew.

19. At all times material I had the diagnosed impairment and disability of bipolar disorder **type 1**which was mitigated**, about which Defendant knew, and I had a record of bipolar disorder** about which Defendant knew. **Defendant also perceived that I had bipolar disorder. My bipolar disorder when untreated affected my brain, neurologic, cognitive and thinking functions, including**

   a. **sleeping - severely limited**
   b. **speech – rapid**
   c. **thinking – flights of ideas, disassociation, impaired memory, auditory hallucination**
   d. **hypomanic and manic episodes**
   e. **depression, sometimes extreme**
   f. **excessive irritability**
   g. **sociability**

20. Defendant is an entity and is a person too. Defendant's hospital was a place of public accommodation

21. I was qualified for the position of physician with privileges at Defendant's hospital in Tacoma.

22. Defendant withdrew and or revoked my temporary privileges and denied my application for privileges because of my national origin, creed, race and color and because of my disability, which actions violated the Washington Human Rights Act, RCW 49.60.030, RCW 40.60.180(1), (2) **and (3)** as to employment, and RCW 49.60.215 as to public accommodations , and RCW 40.60.210.  **I allege this because among other things and pending discovery:**

- **Dr Deleon direct statement to Plaintiff " Your  mental illness is  a red flag" such statement was made right before revoking the temporary privileges and repeated during the meeting and afterwards.**
- **Despite almost the identical process of privilege application of both Group Health and Franciscan , they reached different decisions regarding plaintiff application.**
- **Similarly situated non disabled, non brown, non Muslim, not from Egypt physicians applications for privileges were granted per Dr Deleon and other staff members and per Group health staff members.**
- **Dr. Dempster of Group Health reported to Plaintiff that Dr Hoftel told him "you should watch what type of people you are bringing to work at the hospital" referring to ethnicity, creed and religion when Dr Dempster questioned the reasons for revoking privileges and that Franciscan is discriminating.**
- **During and before the appeal panel a board member, Dr. Cameroni, attested to the concerns and fear of the committee members (and himself) to hire Plaintiff based on assumption  that plaintiff would not be able to do the job because of disability. Defendant even denied and resisted offering plaintiff proctor ship as a solution to mitigate any concern because of his disability.**
- **Revoking Plaintiffs' privileges was decided to be "premature"  and unsubstantiated by a three member hearing panel. However, the decision was still overturned by the MEC only and yet for other different and unsubstantiated reasons. When Dr Deleon was asked about those new requirements that were not part of the process or application he claimed if this specific requirement was satisfied from the beginning it would have changed everything and privileges would not have been revoked or denied. The new requirement was to talk with medical director directly at Mayo Clinic to evaluate "mental illness implication on work" and to verify my complaints about fraud and false claim acts.**
- **The only evidence Defendant had was that Plaintiff  was competent and capable of doing his job and duties and was qualified – from Mayo coworkers and superiors, and professors, University of Washington**

**professors and associates, Group Health colleagues and staff, and treating physicians, States Licensure's, NPDB, and etc.School of Medicine and Residency program, and monitoring programs WPHP, HPSP..etc. Defendant's statements and actions , however ,were always based on mere discriminating assumptions and pre textual reasons.**

23. Plaintiff complained, reported and requested investigation regarding Defendant's act of discrimination against him in violation of Washington human rights act to the Officials of defendant including Dr. Mark Adams, Dr Deleon, Dr Bill Cameron and their attorneys. Also reports were made to Group health colleagues such as Dr Dempster and Dr lee and Ms Nancy Decoy which were conveyed to Franciscan Health System. Complaints, reports and requests of investigation were made in good faith before denial of privileges and because of which Defendant retaliated against me denying privileges and reported denial of privileges with malice to NPDB causing irreparable damage.

**24**. I have lost income and earning capacity and suffered emotional distress and loss of enjoyment of life because of Defendant's withdraw of my temporary privileges and denial of my application for privileges in violation of the Washington Human Rights Act.

**25**. I am entitled to bring a civil action because of Defendant's violation of the Washington Human Rights Act under RCW 40.60.030 (2).

**COUNT III** – **Rehabilitation Act**

**26. Defendant** hospital in Tacoma **was primarily engaged in the business of providing health care, which operations included the provision of phycians, and therefore** is a program or activity under 29 U.S.C. § 794(b**)(3)(A)(i)( and (ii). Defendant** received federal financial assistance **in the form of at least**

**medicare and Medicaid funds for treatment of patients, and a part of those funds was used to hire, contract for and to pay physicians such as myself for providing necessary treatment**

**27**. I had a disability within the meaning of the Rehabilitation Act, namely bipolar disorder, **which was mitigated, and I** was qualified for the position of physician with privileges at Defendant's hospital in Tacoma. **My bipolar disorder is described in para. 19.**

**28**. Defendant withdrew my temporary privileges and denied my application for privileges because of my disability, thus excluding me from participation in, denying me the benefits of, and subjecting me to discrimination under Defendant's program or activity receiving Federal financial assistance, in violation of 29 U.S.C. § 794(a). **I allege this because among other things and pending discovery:**

- **Dr Deleon direct statement to Plaintiff " Your mental illness is a red flag" such statement was made right before revoking the temporary privileges and repeated during the meeting and afterwards.**
- **Despite almost the identical process of privilege application of both Group Health and Franciscan , they reached different decisions regarding plaintiff application.**
- **Similarly situated non disabled applicants were granted privileges per Dr Deleon and other staff members and per Group health staff members.**
- **During and before the appeal panel a board member, Dr. Cameroni, attested to the concerns and fear of the committee members (and himself) to hire Plaintiff based on assumption that plaintiff would not be able to do the job because of disability. Defendant even denied and resisted offering plaintiff proctor ship as a solution to mitigate any concern because of his disability.**
- **Revoking Plaintiffs' privileges was decided to be "premature" and unsubstantiated by a three member hearing panel. However, the decision was still overturned by the MEC only and yet for other different and unsubstantiated reasons. When Dr Deleon was asked about those new requirements that were not part of the process or application he claimed if**

- **this specific requirement was satisfied from the beginning it would have changed everything and privileges would not have been revoked or denied. The new requirement was to talk with medical director directly at Mayo Clinic to evaluate "mental illness implication on work" and to verify my complaints about fraud and false claim acts.**
- **The only evidence Defendant had was that Plaintiff was competent and capable of doing his job and duties and was qualified – from Mayo coworkers and superiors, and professors, University of Washington professor and associates, Group Health colleagues and staff, and treating physicians, States Licensure's, NPDB, and etc.School of Medicine and Residency program, and monitoring programs WPHP, HPSP..etc. Defendant's statements and actions , however ,were always based on mere discriminating assumptions and pre textual reasons.**

<u>29</u>. I have lost income and earning capacity and suffered emotional distress and loss of enjoyment of life and humiliation and irreparable damage to my reputation because of Defendant's withdraw of my temporary privileges and denial of my application for privileges in violation of the Rehabilitation Act.

**COUNT IV -  Title VI of the Civil Rights Act of 1964**

<u>30.</u> My national origin is Egypt, my creed is Muslim, my race is Arab and my color is brown, all of which Defendant knew.

<u>31</u>. Defendant's hospital in Tacoma is a program or activity that received federal financial assistance **in the form of at least medicare and Medicaid funds for treatment of patients, a primary objective of which was to employ physicians such as myself to provide necessary treatment for patients without which Defendant's hospital could not operate**.

<u>32</u>. I was qualified for the position of physician with privileges at Defendant's hospital in Tacoma.

**33**. Defendant withdrew my temporary privileges and denied my application for privileges because of my national origin, creed, race and color, in violation of 42 U.S.C. § 2000d – 2000d-7.  **I allege this because among other things and pending discovery:**

- **Despite almost the identical process of privilege application of both Group Health and Franciscan , they reached different decisions regarding plaintiff application.**
- **Similarly situated non brown, non Muslim, not from Egypt physician applications for privileges were granted per Dr Deleon and other staff members and per Group health staff members.**
- **Dr. Dempster of Group Health reported to Plaintiff that Dr Hoftel told him "you should watch what type of people you are bringing to work at the hospital" referring to ethnicity, creed and religion when Dr Dempster questioned the reasons for revoking privileges and that Franciscan is discriminating.**
- **Revoking Plaintiffs' privileges was decided to be "premature"  and unsubstantiated by a three member hearing panel. However, the decision was still overturned by the MEC only and yet for other different and unsubstantiated reasons. When Dr Deleon was asked about those new requirements that were not part of the process or application he claimed if this specific requirement was satisfied from the beginning it would have changed everything and privileges would not have been revoked or denied. The new requirement was to talk with medical director directly at Mayo Clinic to evaluate "mental illness implication on work" and to verify my complaints about fraud and false claim acts.**
- **The only evidence Defendant had was that Plaintiff  was competent and capable of doing his job and duties and was qualified – from Mayo coworkers and superiors, and professors, University of Washington professors and associates, Group Health colleagues and staff, and treating physicians, States Licensure's, NPDB, and etc.School of Medicine and Residency program, and monitoring programs WPHP, HPSP..etc. Defendant's statements and actions , however ,were always based on mere discriminating assumptions and pre textual reasons.**

**34**. I have lost income and earning capacity and suffered emotional distress and loss of enjoyment of life and humiliation and irreparable damage to my reputation

because of Defendant's withdraw of my temporary privileges and denial of my application for privileges in violation of Title VI.

**COUNT V – False Claims Act**

**35**. Prior to Defendant's denial of my application for privileges at its hospital in Tacoma, I engaged in actions in furtherance of an action under 31 U.S.C. § 3730 or other efforts to stop 1 or more violations of 31 U.S.C. § 3730, which actions and efforts involved my former employer, Mayo Health System – Albert Lea, and which included a lawsuit against my former employer for wrongful discharge in violation of the anti-retaliation provision of the False Claims Act, 31 U.S.C. § 3730 (h)(1).

**36**. At all times material, Defendant knew of my actions and lawsuit against my former employer **because I told Defendant about it and it was discussed with me by Defendant.**

**37**. Vis *a vis* Defendant if I was not an employee I was a contractor in my application for privileges.

**38**. Defendant withdrew and or revoked my temporary privileges and denied my application for privileges because of my actions and lawsuit against my former employer protected by 31 U.S.C. § 3730(h)(1), which action constitutes a discharge and discrimination in the terms and conditions of employment at Defendant and at Group Health in violation of 31 U.S.C. § 3730(h)(1).

**39**. I have lost income and earning capacity and suffered emotional distress and loss of enjoyment of life and humiliation and irreparable damage to my reputation

because of Defendant's withdraw of my temporary privileges and denial of my application for privileges in violation of 31 U.S.C. § 3730(h)(1).

Count VI 42 U.S Code 1981- -Equal Rights Under The Law

**40**. At all time material, and for the purpose of all counts and pleading Franciscan Health System is an entity and a person.

**41**. At all time material, Plaintiff is a citizen of the United States of America and within the jurisdiction of the United States of America.

**42**. My race is Arab, my creed is Muslim, my color is Brown, my country of origin is Egypt, because of which Defendant intentionally discriminated against me and it revoked my temporary privileges and denied my application for privileges at its hospitals and subsequently reporting privileges denial and reporting such to National Practitioner Data Bank and others and which I have to self disclose and publish. By doing so Defendant interfered with and impaired my rights and ability to make of enforce my existing contract with group health and with itself among others including, but not limited to, patients and third parties payers, and my right and ability to make of enforce future contracts and opportunities with group health and with itself among others including, but not limited to, future patients and third parties payers, and it interfered with and impaired my property interest in my profession, and my right and ability to do on call and or hospital or Medicine shifts or work, **in violation of 42 U.S. 1981.**

**43**. I have lost income and earning capacity and suffered emotional distress and loss of enjoyment of life and humiliation and irreparable damage to my reputation because of Defendant's withdraw of my temporary privileges and denial of my

application for privileges and reporting such to NPDB and others in violation of 42 U.S. 1981.

      Wherefore, I demand judgment against Defendant for such damages that will fully and fairly compensate me for my losses and injuries proved herein, for double lost wages under 31 U.S.C. § 3730(h)(2), for all civil penalties to which I may be entitled, and for interest and costs.

Dated: Nov. 6, 2015.                        Alaa Elkharwily
                                             Alaa Elkharwily, M.D.
                                             Plaintiff Pro Se
                                             **Address**
                                             **220 S Broadway # 1508**
                                             **Rochester, MN 55904**
                                             **Telephone Number**
                                             **507-398-6735**