UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| ALAA ELKHARWILY, M.D.,<br><br>Plaintiff,<br><br>v.<br><br>FRANCISCAN HEALTH SYSTEM, a Washington non-profit corporation,<br><br>Defendant. | CASE NO. 3:15-cv-05579-RJB<br><br>ORDER ON DEFENDANT'S MOTION TO DISMISS UNDER RULE 12(B)(6) |

THIS MATTER comes before the Court on Defendant's Motion to Dismiss Under Rule 12(b)(6). Dkt. 8. Defendant's motion seeks dismissal of Plaintiff's First Amended Complaint. Dkt. 8. *See* Dkt. 1-3. However, prior to Defendant filing Defendant's Reply (Dkt. 16), the Court granted Plaintiff's Motion to File the Second Amended Complaint (Dkt. 14-1) and gave Defendant an opportunity to modify or supplement the Motion to Dismiss Under 12(b)(6). Dkt. 21. The Second Amended Complaint, which the Court considers below in light of Defendant's motion, adds new facts but does not add new claims. *C.f.* Dkt. 14-1 and Dkt. 1-3. The Court has

considered the pleadings filed in support of and in opposition to Defendant's motion and the file herein. Dkt 14, 16.

BACKGROUND

According to the First Amended Complaint, Plaintiff, a Washington-licensed physician, was offered employment as a physician by Group Health of Tacoma, Washington, contingent upon being granted "privileges to practice medicine" by Defendant. Dkt. 1-3, at 1. Plaintiff alleges that Defendant denied Plaintiff's application for privileges and revoked temporary privileges on the basis of Plaintiff's national origin, creed, race, color, and bipolar mental health status, and because Defendant knew of Plaintiff's wrongful discharge action against former employer, Mayo Health System. Dkt. 1-3, at 1, 2, 4, 6. As a result, Plaintiff has allegedly suffered loss of income and employment benefits. Dkt. 1-3, at 2. Plaintiff also alleges that Defendant harmed Plaintiff by reporting its denial and revocation of privileges to the National Practitioner Data Bank and to Group Health, where Plaintiff had "fail[e]d to demonstrate the scope and adequacy of his experience or his current clinical skill and competence[.]" Dkt. 1-3, at 2. The Second Amended Complaint adds that Defendant knew that its report was false, because "all information" that Defendant had demonstrated only that Plaintiff was competent. Dkt. 23, at 4.

Also alleged in the Second Amended Complaint is that, immediately prior to, during, and following Defendant's denial and revocation of privileges, "Dr. Deleon" told Plaintiff that "[his] mental illness is a red flag." Dkt. 23, at 2. Also around that time, according to Plaintiff, "Dr. Hoftel" told "Dr. Dempster of Group Health" that "you should watch what type of people you are bringing to work at the hospital." Dkt. 23, at 2. Plaintiff also adds additional details about a board appeals process at which "Dr. Cameroni" attested to Plaintiff's inability to do the job

because of his disability, and an appellate body "denied and resisted" giving Plaintiff the chance to do a proctorship to alleviate concerns about Plaintiff's mental health. Dkt. 23, at 2.

In Plaintiff's First Amended Complaint, Plaintiff alleges a common law tort claim for Defamation (Count I), as well as violations of the Washington Law Against Discrimination (Count II), the Rehabilitation Act (Count III), Title VI of the Civil Rights Act of 1964 (Count IV), the False Claims Act (Count V), and 42 U.S.C. § 1981 (Count VI). Dkt. 1-3. The Second Amended Complaint does not add additional claims. Dkt. 23.

## STANDARD FOR MOTION TO DISMISS

Fed. R. Civ. P. 12(b) motions to dismiss may be based on either the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Department*, 901 F.2d 696, 699 (9th Cir. 1990). Material allegations are taken as admitted and the complaint is construed in the plaintiff's favor. *Keniston v. Roberts*, 717 F.2d 1295 (9th Cir. 1983). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007)(internal citations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id*. at 1965. Plaintiffs must allege "enough facts to state a claim to relief that is plausible on its face." *Id*. at 1974.

DISCUSSION

(1) Defamation (Count I)

Claims for defamation hold in tension "the need to perpetuate an uninhibited marketplace of ideas" with the idea that "there is no constitutional value in false statements of fact." *Taskett v. KING Broad. Co.*, 86 Wn. 2d 439, 444 (1976) (internal quotes omitted). To state a claim for defamation, Plaintiff must allege that Defendant made a false statement that was an unprivileged communication and caused plaintiff harm. *Mark v. Seattle Times*, 96 Wn. 2d 473, 486 (1981). If Plaintiff can establish a prima facie case defamation, then Defendant may raise an immunity defense. *See, e.g., Momah v. Bharti*, 144 Wn.App. 731, 741 (Div. I, 2008). The Health Quality Improvement Act carves out statutory immunity for reports submitted to the National Practitioner Data Bank "without knowledge of the falsity of the information contained in the report." 42 U.S.C. § 11137(c).

Based on the pleadings, Plaintiff has stated a claim for defamation. The false statement alleged is that Defendant submitted a report to the National Practitioner Data Bank declaring that Plaintiff had failed to demonstrate the necessary experience, clinical skill, and competence, under circumstances where "all" that Defendant "had was that [Plaintiff] was competent," including submissions from coworkers and colleagues. Dkt. 23, at 3. Next, Defendant makes only a cursory, unsatisfactory challenge to whether the communication was unprivileged. Finally, Plaintiff has shown harm by alleging that the submitted report, which was communicated to at least one third party, forfeited Plaintiff of employment opportunities and benefits. Dkt. 23, at 2, 3.

At this stage, the defamation claim also survives the immunity defense raised by Defendant. Assuming that Defendant possessed only the documentation alleged (e.g.- reports

1  from coworkers declaring Plaintiff's competence), a reasonable inference could be made that

2  Defendant had knowledge that the submitted report was "false," because the documents did not

3  substantiate the conclusions of the report. Discovery may test the strength of Plaintiff's

4  defamation claim, but Plaintiff has stated a claim for defamation.

5  (2) Washington Law Against Discrimination (Count II)

6  Defendant argues that Plaintiff's WLAD claim fails for the same reasons as Plaintiff's

7  Rehabilitation Act claim, namely, because Plaintiff does not sufficiently allege that he is

8  "disabled," and even if so, the complaint lacks any allegation that Defendant denied Plaintiff's

9  application for privileges based on Plaintiff's disability. Dkt. 8, at 14. However, for the same

10 reasons set forth below, *see Count III*, these arguments fail. Plaintiff has stated a claim under the

11 WLAD.

12 (3) The Rehabilitation Act (Count III)

13 Defendant argues that Plaintiff's Rehabilitation Act claim fails because (1) Plaintiff does

14 not allege facts sufficient to show that Plaintiff is "disabled," when the complaint lacks mention

15 of how Plaintiff's bipolar diagnosis substantially limits a major life activity; and (2) even if

16 Plaintiff is "disabled," Plaintiff fails to allege facts sufficient to show that Plaintiff's disability

17 was the reason that Defendant denied and revoked privileges. Dkt. 8, at 12-14. Defendant's

18 Reply reiterates the same arguments, *see* Dkt. 16, which are both unsuccessful.

19 The ADA defines "disability" as an impairment that "substantially limits one or more

20 major life activities." 29 C.F.R. § 1630.2(g). "Substantially limits" is defined as follows:

21 > "[I]t should easily be concluded that *the following types of impairments will*, at a minimum, *substantially limit the major life activities indicated*: . . . *bipolar disorder . . .*
22 > *substantially limit[s] brain function*. The types of impairments described in this section may substantially limit additional major life activities not explicitly listed above. 29
23 > C.F.R. § 1630.2(j)(3)(iii) (emphasis added).

24

In other words, "bipolar disorder" is a "type of impairment," and "substantially limit[ed] brain function" is one of the enumerated "major life activities." Assuming, as Plaintiff alleges, that Plaintiff is diagnosed with bipolar disorder, then under the statute Plaintiff is disabled.

Defendant's other argument, that Plaintiff has not alleged that the disability is the cause of Defendant's denial of privileges, is also without merit. Plaintiff alleges that "Defendant withdrew my temporary privileges and denied my application for privileges because of my disability[,]" especially under circumstances where Plaintiff's colleague allegedly commented that "[Plaintiff's] mental illness is a red flag" in the context of denying privileges. Dkt. 23, at 8. Plaintiff has stated a claim under the Rehabilitation Act.

(4) Title VI of the Civil Rights Act of 1964 (Count IV)

Defendant argues that Plaintiff's Title VI claim fails because Plaintiff fails to allege that Defendant is a recipient of federal funds. Dkt. 8, at 11, 12. In Plaintiff's Response, Plaintiff cites authority for the proposition that, as a beneficiary of Medicare and Medicaid funds, Defendant receives federal financial assistance for Title VI purposes. Dkt. 14, at 5. Defendant's Reply distinguishes authority cited and charges that Plaintiff has not identified the source of federal funding of which Defendant is a recipient. Dkt. 16, at 3. Defendant also broadcasts an issue likely to be raised in a summary judgment motion, namely, that Plaintiff may not be able to prove that he was the intended beneficiary of the federal funding, an issue not addressed by this order. *Id*.

Defendant's challenge to Plaintiff's Title VI claim is without merit. Although not binding authority, one case cited by Plaintiff, *U.S. v. Harris Methodist Fort Worth*, 970 F.2d 94, 97, 98 (5th Cir.1992), is at least persuasive to support Plaintiff's argument that Defendant is subject to Title VI as a recipient of federal funds, and Defendant provides no better authority to the

contrary. *See* Dkt. 16. Plaintiff alleges that Defendant receives federal assistance "in the form of at least medicare [sic] and Medicaid . . . to employ physicians such as [Plaintiff]." Dkt. 23, at 9. As Defendant acknowledges, the specificity with which Plaintiff can show that he is an intended beneficiary of federal funds may be fodder for a later motion, *Fobbs v. Holy Cross Health System Corp.*, 29 F.3d 1439, 1447 (9th Cir. 1994), but at this stage of the litigation Plaintiff has satisfied the threshold of Fed.R.Civ.P. 12(b)(6) by stating a claim under Title VI.

(5) The False Claims Act (Count V)

Plaintiff raises an anti-retaliation claim under 31 U.S.C. § 3730(h) of the False Claims Act, alleging that Defendant's denial and revocation of privileges was retaliation for Plaintiff's pursuit of a wrongful discharge claim against Mayo Health System. Dkt. 1-3, at 8. Plaintiff must make a prima facie case that (1) Plaintiff engaged in whistleblowing activity; (2) that Defendant knew of that activity; (3) and that Defendant retaliated against Plaintiff because of that activity. *Moore v. California Inst. Of Tech. Jet Propulsion Lab.,* 275 F.3d 838, 844-45 (9th Cir. 2002). *See* § 3730(h). Claims by "relators" such as Plaintiff typically involve a whistle blower exposing fraud by a government contractor, presenting an opportunity procedurally for the U.S. government to intervene. § 3730(b)(2).

Plaintiff's FCA claim lacks coherency, because nothing alleged connects Plaintiff's whistle blowing activity, pursuing the wrongful discharge claim against Mayo Health System, to the alleged retaliation by Defendant. Nor is such a broad interpretation of the statute warranted based on the statute's construction. *See* § 3730(h) ("employee…employer"). Under Plaintiff's theory, the FCA would be expanded to include Defendant, who is a third party to the whistle blowing activity by Plaintiff against Mayo Health System, and the Court is aware of no authority for such an expansive interpretation. *C.f.,* e.g*., Sicilia v. Boeing Co.*, 775 F. Supp. 2d 1243, 1254

1  (W.D. Wash. 2011); *Neighorn v. Quest Health Care*, 870 F. Supp. 2d 1069, 1101 (D. Or. 2012).

2  But even if so, Plaintiff fails to establish how, why, or under what circumstances denying and

3  revoking privileges could constitute retaliation, and Plaintiff has not followed the unique

4  procedure for FCA claims, for example, by placing the complaint under seal and serving only the

5  federal government and not the defendant. § 3730(b)(2). The FCA should be dismissed, because

6  no opportunity to amend could remedy these defects.

7  <u>(6) 42 U.S.C. § 1981 (Count VI)</u>

8      Defendant's motion makes only a passing reference to Count VI in the introduction to the

9  briefing and makes no mention of the claim in the body of the argument in the briefing. *See* Dkt.

10  8 at 3, 4. On the briefing provided, Defendant does not sufficiently identify defects as to this

11  claim.

12                          \* \* \*

13      Therefore, it is hereby **ORDERED** that Defendant's Motion to Dismiss Under Rule

14  12(b)(6)(Dkt. 8) is GRANTED IN PART and DENIED IN PART.

15      Defendant's motion is GRANTED as to Count V only. Count V, Plaintiff's False Claims

16  Act claim, is DISMISSED.

17      Defendant's motion is otherwise DENIED.

18      The Clerk is directed to send uncertified copies of this Order to all counsel of record and

19  to any party appearing *pro se* at said party's last known address.

20      Dated this 1st day of December, 2015.

                                      ROBERT J. BRYAN
                                      United States District Judge