
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| ALAA ELKHARWILY, M.D., <br><br> Plaintiff, <br><br> v. <br><br> FRANCISCAN HEALTH SYSTEM, a Washington non-profit corporation, <br><br> Defendant. | CASE NO. 3:15-cv-05579-RJB <br><br> ORDER ON PLAINTIFF'S MOTION TO COMPEL DISCOVERY RESPONSES |

THIS MATTER comes before the Court on Plaintiff's Motion to Compel Discovery Responses. Dkt. 42. The Court has considered the pleadings filed in support of and opposition to the motion, Dkts. 48, 53, and the remainder of the file herein.

## BACKGROUND

*1. Facts and claims.*

The basic facts are not in dispute and are summarized as follows.

Plaintiff was hired by Group Health Permanente as a night-shift hospitalist in early-2012, with employment contingent on Plaintiff obtaining "privileges" to practice medicine from

Defendant, a formal administrative process requiring approval of Plaintiff's application for privileges. Plaintiff's application, submitted in May or June of 2012, was denied by Defendant's Regional Credentials Committee. Plaintiff appealed to the Medical Executive Committee without success, an appeal resolved in July of 2013. Defendant submitted Plaintiff's denial data to the National Physicians Data Bank (NPDB) during 2012, which Plaintiff alleges caused Plaintiff to be deprived of job opportunities.

Plaintiff's Second Amended Complaint (Dkt. 23) alleges five claims, four of which remain following Defendant's Fed.R.Civ.P. 12(b)(6) motion: common law defamation, and violations of the Washington Human Rights Act, Rehabilitation Act, and Title VI of the Civil Rights Act. Plaintiff alleges discrimination on the basis of race, religion, national origin, and disability status.

2.  *Discovery.*

At issue is Defendant's responses to two requests for production (##8 and 9) and an interrogatory (#7), which Plaintiff argues are insufficient.

Plaintiff's Request for Production #8 seeks Defendant's "[production of] all emails and text messages concerning Plaintiff between employees, agents or attorneys of Defendant." Dkt. 42, at 3. Plaintiff's Request for Production #9 extends the same request to emails and messages between Defendant's employees, agents or attorneys and third parties: "(1) Plaintiff, (2) any employee, agent or attorney of Group Health, (3) any employee, agent or attorney of any former employer of Plaintiff and (4) any employee, agent or attorney of National Practitioners Data Bank [NPDB]." *Id*.

Defendant provided Plaintiff with the same response to both requests for production as follows:

> Defendant objects to this request on the grounds that this request is overbroad and burdensome. Defendant further objects to the extent that this request seeks documents which are protected by the attorney-client and/or work product privileges. Without waiving and

subject to these objections, Defendant responds: Defendant does not have an email archiving system. This means there is no single location or application that can be queried for email matching specified criteria. Email can only be searched if it is maintained in a live email account. To locate documents responsive to this request, Defendant searched the live email accounts of the following custodians: Dr. Dennis deLeon, Dr. Tony Haftel, Dr. Mark Adams, Dr. William Cammarano, and Ms. Kim Nighswonger. Non-privileged responsive documents are attached as FHS 000968 to FHS 000973. Defendant also refers to the emails previously produced with Defendant's initial disclosures as well as by Plaintiff in this matter.

*Id*.

Plaintiff's Interrogatory #7 requests that Plaintiff "[i]dentify by name, address, race, and national origin of each physician who applied for privileges to practice in Defendant's hospital in 2011-2013." *Id*. Defendant's Answer to Interrogatory #7 states:

Defendant objects to this interrogatory on the grounds that it is overbroad and unduly burdensome. Defendant further objects to this interrogatory on the grounds that it seeks private information of non-party individuals. Defendant further objects to this interrogatory on the grounds that it seeks information which is not regularly tracked or recorded by Defendant. Without waiving and subject to these objections, Defendant responds: Defendant does not regularly track applicants by date of application nor does it regularly track applications that have been denied or withdrawn. To obtain this information would require Defendant to review all credentialing files for each individual who applied for privileges during the period requested by Plaintiff. Attached as FHS 000920 to FHS 000967 is a spreadsheet reflecting all physicians who have been granted privileges by Defendant from 2009 to 2015 along with their country of origin. [*See* Dkt. 52-6]. Defendant does not regularly track applicants by race. Physicians in the attached spreadsheet are identified by an internal identification number. Defendant will not identify individuals by name and address unless ordered to do so by the Court.

*Id*.

As noted in Defendant's Answer to Interrogatory #7, Defendant provided Plaintiff with a spreadsheet listing all physicians who have been granted privileges, along with their country of origin, but the physicians are identified by number, not by name. Dkt. 52-6. Defendant also provided Plaintiff with the Regional Credential Committee minutes from 2010-2015, but Defendant redacted identifying information. Dkt. 52-7.

ORDER ON PLAINTIFF'S MOTION TO COMPEL
DISCOVERY RESPONSES- 3

## DISCUSSION

Fed.R.Civ.P. 26(b)(1) provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant . . . and proportional[.]" The rule enumerates considerations when weighing proportionality: (1) the importance of the issues at stake in the action, (2) the amount in controversy, (3) the parties' relative access to relevant information, (4) the parties' resources, (5) the importance of the discovery in resolving the issues, and (5) whether the burden or expense of the proposed discovery outweighs its likely benefit. Fed.R.Civ.P. 26(b)(1). On motion by a party or *sua sponte* courts must limit discovery that is unreasonably cumulative or duplicative, or can be obtained from a more convenient, less burdensome, or less expensive source. Fed.R.Civ.P. 26(b)(2)(C)(ii). Specific to electronically stored information, a party "need not provide discovery . . . [when] not reasonably accessible because of undue burden or cost." However, if that showing is made, "the court may nonetheless order discovery . . . if the requesting party shows good cause[.]" Fed.R.Civ.P. 26(b)(2)(B).

<u>Plaintiff's RFP #8 and 9:</u>

The parties' briefing and the Court's analysis consolidates Plaintiff's Request for Production #8 and #9, which substantially overlap, but analyzes separately the three types of discovery at issue: live emails, archived emails, and text messages.

    a.  *Live emails.*

With the knowledge that accessing its archived emails would be difficult, Defendant voluntarily searched and produced responsive discovery from the "live" email accounts of certain doctors that Plaintiff concedes "would be some likely accounts to search." Dkt. 42, at 6. Plaintiff also names Agueda Delgadillo of Group Health as a person whose live emails Defendant should produce. Dkt. 42, at 6. Plaintiff's Reply also identifies members of the

Regional Credentials Committee and the Medical Executive Committee present at meetings where Plaintiff's application was discussed, naming the following: "Drs. Burns, Campbell, Cortazzo, Uould, Mattel, Hildebrand, Llera, Wilson and Yuhasz." Dkt. 53, at 2. Plaintiff also listed committee members not present for the meetings:

> Physicians: Drs. Jason Alien, Stephen Atkinson, Ulrich Birlenbach, David Brown, Lynne Clark, Marco Cruz, Melody Denson Steve Duras, Donald George, Mark Hassig, William Hirota, Theodore Inouye, Richard Irigoyen, John Jiganti, Peter Kesling, Charles Leusner, Manta Malik, Vidya Menon, Navdeep Rai, Yolanda Richardson, Maggie Sekeramayi, Alan Thomas, Jude Verzosa, Kevin Ward, Wendy Weeks, Tanya Wilke and Allen Yu.
>
> Other members: Joe Wilczek, President & CEO
>
> Guest: Julie Burns, Chief Regulatory Officer.

Dkt. 53, at 2. Defendant concedes that live email account searches "can be performed relatively quickly[,]" and states that Defendant is willing to perform more searches if provided specific names. Dkt. 49, at 5.

If reasonably accessible[1], Defendant should conduct a live email account search of the aforementioned individuals and produce all responsive, nonprivileged discovery. To that extent, Plaintiff's motion should be granted.

  *b. Archived emails.*

The Court lacks complete information to make a determination. In Plaintiff's Reply, Mr. Elkharwily declares under penalty of perjury:

> 5. Right after the end of my last appeal in May 2013 I asked Mr. [Bruce] Megard [Defendant's lawyer] and Josh (the lawyer conducting my last hearing) if I could get copies of all emails (whether produced or not), minutes, documents, or any in writing note that was used in the process of my appeal or not produced for any reason. They both refused.

---

[1] Without additional information about Agueda Delgadillo or the RCC and MEC board members, the record is unclear whether all of these individuals have live email accounts accessible to Defendant. The Court assumes the affirmative. *See* Fed.R.Civ.P. 34(c).

> 6. After [Defendant's] Board issues its final decision denying my application for privileges, which was July 2013, I called Mr. Megard immediately again and I asked him to send me copies of everything again and I told him at least I need copies of the emails and documents produced and were used in the entire privilege process. He refused and said Washington law does not allow him to send me any copies. He asked me why I needed those and I told him I am filing a law suit [sic]. Mr. Megard said, "I advise you not to. You are going to lose time and money and you will lose." I said, "Well, I will let the judge and jury decide that."

Dkt. 55, at 2. Plaintiff argues that Defendant is to blame for the emails' inaccessibility, because Plaintiff placed Defendant on notice of likely litigation prior to the emails' archiving. *Id*. Plaintiff did not provide this information in his initial motion filing. Dkt. 42.

While these new factual representations could be grounds for a motion to strike, *see* LCR 7(g), because of the burden shifting of Fed.R.Civ.P. 26(b)(2)(B), which allows Plaintiff to rebut Defendant's showing that electronic information is reasonably accessible, a surreply, not a motion to strike, is appropriate. To that extent, Defendant's motion should be continued until July 8, 2016 for Defendant to file a surreply, if any, not to exceed 5 pages in length.

    *c.*   *Text messages.*

Plaintiff summarily argues that Defendant "simply has not responded" to its request to produce text messages, so they should be produced. Dkt. 42, at 7. Defendant argues that it cannot produce text messages because Defendant does not have possession of or the legal right to text messages of its employees, agents, or attorneys, especially where Defendant did not provide them with cell phones, so any text messages that could be found do not belong to Defendant. Dkt. 48, at 10. Plaintiff's Reply does not respond to Defendant's argument. Dkt. 42, at 7.

Because text messages of Defendant's employees, agents, and attorneys are not within Defendant's possession or control, Defendant should not be compelled to produce text messages. Fed.R.Civ.P. 34(a)(1). To that extent, Plaintiff's motion should be denied.

Plaintiff's Interrogatory #7:

    *a. Applied for privileges versus granted privileges.*

According to Plaintiff, Defendant has not completely responded to this interrogatory because Defendant has only identified individuals who were granted privileges, not those who applied for privileges. Defendant maintains that it cannot readily identify physicians who applied for privileges because it did not track credentialing applications by date of application. Dkt. 48, at 3; Dkt. 50, at 2. Defendant represents that the only way to identify all privilege applicants would be to manually search a "very large number" of hard copy credentialing files, and doing so would still not necessarily include incomplete or withdrawn applications, which in many cases were destroyed or returned to applicants, making it "impossible" to recreate a list of all applicants. Dkt. 52, at 4; Dkt. 50, at 2. Defendant also points to the high cost of a manual review of all credentialing applications. Dkt. 48, at 7, 8. Plaintiff replies by pointing to data provided by Defendant to the NPDB of privilege denials as "at least" one area of discovery not provided. Dkt. 53, at 4.

Defendant has answered the interrogatory by identifying most applicants to Plaintiff, because Defendant tracks applicants who were granted privileges. With respect to withdrawn or incomplete applications, based on Defendant's representations about how it maintains credentialing files and the credentialing process itself, where withdrawn or incomplete applications may not be preserved, requiring Defendant to manually review more than one-thousand credentialing files is overly burdensome with relation to the potential discovery to be gained. However, to the extent that, as Plaintiff argues, Defendant produced data to the NPDB of privilege denials, Defendant should produce that discovery forthwith.

    *b. Internal identification numbers versus name and address.*

1  Plaintiff takes issue with Defendant's answer, which identified successful applicants by
2  internal identification number, not by name and address. Dkt. 42, at 7-9. Defendant defends its
3  nondisclosure of names and addresses by invoking the state law peer review privilege, which
4  Defendant argues should be adopted by this Court. Dkt. 48, at 12, citing to *Jaffee v Redmond*,
5  518 U.S. 1, 10-16 (1996). Plaintiff argues that even if the state law privilege applies generally to
6  federal common law claims, it is not applicable to the type of claims Plaintiff alleges, and even if
7  it is applicable, the statute makes specific content privileged, not persons' identities. Dkt. 42, at
8  8, 9. *See* RCWA § 70.41.200(1) and (3).

9  The Court need not address Defendant's invitation to adopt Washington's peer review
10 privilege generally—which may be an issue of first impression for federal courts in
11 Washington—because the discovery issue is resolved through the Court's inherent power to
12 control discovery and Fed.R.Civ.P. 26(b). Plaintiff's blanket request for hundreds of names and
13 addresses does not warrant the privacy intrusion that would result. Defendant produced Regional
14 Credential Committee meeting minutes from 2010 to 2015 with names redacted. Dkt. 52-8. The
15 minutes detail applicants' potential liabilities, such as disciplinary lapses, substance abuse, or
16 criminal conduct. *See id*. Defendant also produced a list of all successful applicants, identified by
17 a number, with their place of origin. Dkt. 52-6. Plaintiff has not made a sufficient showing that
18 revealing the addresses and names of *all* the individuals in those minutes or the produced list is
19 reasonably necessary or even relevant to pursuing his claims.

20 Defendant should answer Plaintiff's interrogatory to the extent that Defendant submitted
21 privilege denial data to the NPDB. To that extent, Plaintiff's motion to compel Plaintiff's
22 Interrogatory #7 should be granted, but it should be otherwise denied.

23
24

\* \* \*

Therefore, it is hereby **ORDERED** that Defendant's Motion to Dismiss Under Rule 12(b)(6)(Dkt. 8) is GRANTED IN PART, DENIED IN PART, and CONTINUED IN PART, as follows:

(1) Plaintiff's Request for Production #8 and Plaintiff's Request for Production #9:

    (a) GRANTED in part as to Defendant's production of live emails for the following individuals, insofar as the live emails are reasonably accessible to Defendant:

        Agueda Delgadillo, "Drs. Burns, Campbell, Cortazzo, Uould, Mattel, Hildebrand, Llera, Wilson, and Yuhasz," Jason Alien, Stephen Atkinson, Ulrich Birlenbach, David Brown, Lynne Clark, Marco Cruz, Melody Denson Steve Duras, Donald George, Mark Hassig, William Hirota, Theodore Inouye, Richard Irigoyen, John Jiganti, Peter Kesling, Charles Leusner, Manta Malik, Vidya Menon, Navdeep Rai, Yolanda Richardson, Maggie Sekeramayi, Alan Thomas, Jude Verzosa, Kevin Ward, Wendy Weeks, Tanya Wilke, Allen Yu, Joe Wilczek, and Julie Burns.

    (b) CONTINUED in part for a surreply, if any, to be filed by July 8, 2016, as to Defendant's production of archived emails;

    (c) DENIED in part as to Defendant's production of text messages.

(2) Plaintiff's Interrogatory #7:

    GRANTED in part insofar as Defendant submitted privilege denial data to the National Practitioners Data Bank, and otherwise DENIED.

The Clerk is directed to send uncertified copies of this Order to all counsel of record and to any party appearing *pro se* at said party's last known address.

Dated this 30th day of June, 2016.

_____
ROBERT J. BRYAN
United States District Judge