UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

ALAA ELKHARWILY, M.D.,

Plaintiff,

v.

FRANCISCAN HEALTH SYSTEM,

Defendant.

CASE NO. 3:15-cv-05579-RJB

ORDER ON DEFENDANT FRANCISCAN HEALTH SYSTEM'S MOTION FOR SUMMARY JUDGMENT

THIS MATTER comes before the Court on Defendant Franciscan Health System's Motion for Summary Judgment. Dkt. 71. The Court has considered the Motion, Plaintiff's Response (Dkt. 78), Defendant's Reply (Dkt. 82), and the remainder of the file herein. Plaintiff has requested oral argument, which the Court deems unnecessary.

## I. BACKGROUND

*Facts.*

The Court recites the facts substantiated by the record in the light most favorable to Plaintiff. Although the parties' briefing extensively details the factual background, only limited facts need be recited to resolve Defendant's motion.

Plaintiff graduated from the University of Tanta School of Medicine in Egypt in 1998, obtaining the equivalent of an M.D. Dkts. 72-1 at 70; 72-3 at 3, 4. After moving to the United States, Plaintiff began a residency program in 2006. During 2009, Plaintiff took a break from the program for six months due to his diagnosed bipolar disorder, which inhibited Plaintiff's ability to function. *Id*. at 8, 9. The disorder followed years of chronic sleep deprivation. *Id*. at 10. Plaintiff completed the residency in December 2009 with assistance from a monitoring psychiatrist. *Id*. at 11.

Plaintiff did not gain any clinical or work experience after the residency until September 2010, when Plaintiff started a hospitalist position at Mayo Clinic, which Mayo Clinic terminated in December 2010. Dkts. 72-2 at 82, 83; 72-3 at 13. The legitimacy of the termination is the subject of another lawsuit and is disputed by Plaintiff. *See Elkharwily v. Mayo Holding Co., et al.*, Case No. 12-cv-03062-DSD/JJK (D.Min.).

Defendant offered Plaintiff a hospitalist position on March 29, 2012, with a start date of August 6, 2012. Dkt. 72-3 at 24, 25, 31. Defendant considered Plaintiff's application for medical privileges, *see* Dkt.72-1 at 15-38, and provisionally extended them to Plaintiff based on an apparent immediate need for a nocturnal hospitalist. Dkt. 72-3 at 36. Plaintiff's application was sent to the Regional Credential Committee (RCC). The RCC "is the proper process for [screening] all files, including those granted temporary privileges." *Id*. at 37. On August 6, 2012, the RCC discussed Plaintiff's application, which disclosed Plaintiff's bipolar disorder, and thereafter revoked Plaintiff's temporary medical privileges. Dkt. 81-2 at 15. The RCC determined that additional information was needed, and Drs. DeLeon and Haftel of the RCC interviewed Plaintiff on August 7, 2012, asking Plaintiff about the "red flag" of the mental

illness, the circumstances of the separation from Mayo Clinic, the time "gap" in Plaintiff's resume, and when Plaintiff planned to take the board exam. *Id*. at 15, 18.

Dr. DeLeon reported his findings, concluding that "given [Plaintiff's] history, Dr. Haftel and I are in full agreement that in the interest of patient safety, Dr. Elkharwily's FHS privileges should remain in a pending state at this time, contingent upon a full psychiatric evaluation." Dr. DeLeon also recommended that if Plaintiff were to be assigned clinical duties, there should be professional proctoring and oversight. Dkt. 72-1 at 9. The Medical Executive Committee (MEC), which considers the recommendations of the RCC, adopted these recommendations in a formal letter to Plaintiff on August 10, 2012. Dkt. 71-2 at 50, 51. Thereafter, Plaintiff did not obtain an independent psychiatric evaluation, but rather submitted two generally positive evaluations from prior treating psychiatrists. *Id*. Plaintiff did not practice as a nocturnal hospitalist with the oversight of a proctor, but the reason for the failure to secure a proctor is disputed.

The meeting minutes of the MEC, which convened on September 13, 2012, read as follows:

> After careful deliberation the MEC felt that the information provided by [Plaintiff] failed to demonstrate adequate training, experience or competence to be appointed to the Active Medical Staff. This was based on [Plaintiff's] inadequate experience as hospitalist or clinical work in hospital setting, lack of interest in and disregard to Board Certification status and a three year interval during which he had very limited clinical activity in the practice of medicine, including hospital medicine. Therefore, it was M/S/P to recommend that [Plaintiff's] application and request for Active Medical Staff membership and privileges at FHS be denied.

Dkt. 71-2 at 44, 45. The MEC gave notice to Plaintiff of their decision. Dkt. 72-2 at 47.

Plaintiff appealed the MEC recommendation to the Panel Review Committee on January 2 and 3, 2013, which convened on February 6, 2013 and made two recommendations to the MEC: that the MEC "complete the information gather process to more thoroughly evaluate [Plaintiff's] training, experience, and clinical expertise," and that the MEC "provide [Plaintiff

and Defendant] the opportunity to respond to the MEC's rejection of the proctoring plan proposed in September." On February 14, 2013, after considering the panel's recommendations, the MEC voted to confirm its initial denial of medical privileges. Dkt. 71-2 at 50. The MEC gave Plaintiff written notice of its decision. Dkt. 72-2 at 78.

After an Appellate Review Committee affirmed the MEC recommendation, on July 23, 2013 it was provided to the Franciscan Health Systems (FHS) Board of Directors. FHS reported the denial of medical privileges to the National Practitioner Data Bank (NPDB).

The NPDB report stated the following:

> Franciscan Health System's ("FHS") Board of Directors denied the practitioner's request for active medical staff membership and clinical privileges after notice, hearing and appeal and after considering the facts and in furtherance of quality of care. The reasons for this action include practitioner's failure to demonstrate the scope and adequacy of his experience or his current clinical skill and competence for active medical staff membership and privileges.

Dkt. 71-2 at 336-37.

*Complaint.*

The Complaint, which Plaintiff previously amended, alleges a claim of defamation (Count I), violations of the Washington Law Against Discrimination (WLAD) (Count II), the Rehabilitation Act (Count III), Title VI of the Civil Rights Act (Count IV), and the False Claims Act (Count V). Dkt. 18-1. *See* Dkt. 1-2. Plaintiff abandoned a previously-alleged claim for an Equal Right to Enforce Contracts under 42 U.S.C. § 1981. *Id*. The Court previously dismissed the False Claims Act claim (Count V), Dkt. 24 at 8, and Plaintiff has now abandoned the Title VI claim (Count IV), which should be dismissed. Dkt. 78 at 2. Plaintiff has also abandoned the allegations of discrimination based on race and national origin in violation of the WLAD, leaving the allegation of disparate treatment based on disability. *Id*. *See* Dkt. 18-1 at ¶¶18, 19,

22. In sum, Plaintiff is now proceeding on the claim for defamation, as well as the claims for disability discrimination in violation of the WLAD and the Rehabilitation Act.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is proper only if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1985). There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the non moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)(nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt."). *See also* Fed.R.Civ.P. 56(e). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477 .S. 242, 253 (1986); *T.W. Elec. Service Inc. v. Pacific Electrical Contractors Association*, 809 F.2d 626, 630 (9th Cir. 1987).

The determination of the existence of a material fact is often a close question. The court must consider the substantive evidentiary burden that the nonmoving party must meet at trial – e.g., a preponderance of the evidence in most civil cases. *Anderson*, 477 U.S. at 254, T.W. *Elect. Service Inc.*, 809 F.2d at 630. For purposes of summary judgment motions, the court must resolve any factual issues of controversy in favor of the nonmoving party only when the facts specifically attested by that party contradict facts specifically attested by the moving party. The

nonmoving party may not merely state that it will discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial to support the claim. *T.W. Elect. Service Inc.*, 809 F.2d at 630 (relying on *Anderson, supra*). Conclusory, non specific statements in affidavits are not sufficient, and "missing facts" will not be "presumed." *Lujan v. National Wildlife Federation*, 497 U.S. 871, 888-89 (1990).

## III. DISCUSSION

### A. Defamation claim (Count I)

The tort of defamation "vindicates a citizen's interest in his or her good reputation." 16A Wash. Prac., Tort Law And Practice § 20:1 (4th ed.), citing to *Corey v. Pierce Cty.*, 154 Wn. App. 752 (2010). Summary judgment of a defamation claim is not appropriate when "the plaintiff's proffered evidence is of a sufficient quantum to establish a *prima facie* case with convincing clarity." *Mark v. Seattle Times*, 96 Wn.2d 473, 486 (1981), quoting *Sims v. KIRO, Inc.*, 20 Wn.App. 229, 237 (1978). The *prima facie* defamation claim is comprised of four elements: (1) a false statement; (2) lack of privilege; (3) fault; and (4) damages. *Id*. Privileges may arise from common law or are creatures of statute. *Compare, .e.g., Right-Price Recreation, LLC v. Connells Prairie Community Council*, 146 Wn.2d 370 (2002) (statutory privilege); and *Gilman v. MacDonald*, 74 Wn. App. 733 (1994) (common law privilege).

The Complaint alleges that Defendant defamed Plaintiff by reporting the denial of privileges to the NPDB. The parties agree that Defendant submitted the NPDB report, but Defendant contends that the defamation claim fails as a matter of law because the NPDB report (1) falls within a statutory privilege created by the Health Care Quality Improvement Act (HCQIA), 42 U.S.C. § 117 *et. seq.*, and (2) was accurate and truthful. Dkt. 71 at 13-17.

Plaintiff concedes that the statutory privilege under the HCQIA could apply, but argues that the privilege should not apply, for two reasons (Dkt. 73 at 13-20): First, Defendant knew that the NPDB report was false, because Plaintiff's privileges application included positive performance reviews. Second, the privilege only protects "professional review actions," and the submission of the NPDB report does not fit under the term's statutory definition, where the NPDB report was not based on "the competence or professional conduct of a physician," but instead was based on Plaintiff's incomplete application. Dkt. 78 at 14, citing to 42 U.S.C. §11151(9).

Under the HCQIA, healthcare entities "shall report" any "professional review action that adversely affects the clinical privileges of a physician for a period of longer than 30 days" to the state board of medical examiners, which reports the information to the NPDB. 42 U.S.C. § 11133(a). *See* 45 C.F.R. § 60.11(b). A "professional review action" is defined as:

> an action or recommendation of a professional review body . . . which is based on the competence or professional conduct of an individual physician (which conduct affects or could affect adversely the health or welfare of a patient or patients), and which affects (or may affect) adversely the clinical privileges . . . of the physician.

§ 1151(9). "Immunity for reporting exists as a matter of law unless there is sufficient evidence for a jury to conclude the report was false and the reporting party knew it was false." *Brown v. Presbyterian Healthcare Servs.*, 101 F.3d 1324, 31334 (10th Cir. 1996). *See* § 11137(c).

As a threshold matter, Defendant's submission of the NPDB report falls within the HCQIA privilege to protect "professional review actions. *See* § 11151(9). The NPDB report states that clinical privileges were denied where Plaintiff "failed to demonstrate scope & adequacy of experience & competence," and Plaintiff's argument to the contrary is unavailing. Because the HCQIA privilege applies, the remaining inquiry becomes whether there are issues of material fact pertaining to the NPDB report's falsity or Defendant's knowledge thereof.

In considering whether Defendant's submission of the NPDB report was "false" for purposes of § 11137(c), "courts do not evaluate whether the underlying merits of the reported action were properly determined" or whether the report contains inaccurate information, but rather they "evaluate whether the report itself accurately reflected the action taken." *Murphy v. Goss*, 103 F.Supp.3d 1234, 1239, 1242 (D.Oreg.2015). Applied here, there is no material issue of fact as to the consistency between the NPDB report, which states that Plaintiff "failed to demonstrate scope & adequacy of experience & competence," and the action taken, denial of Plaintiff's medical privilege. The content of the statement accurately reflects the conclusion of Defendant, who considered and re-considered Plaintiff's application several times through several layers of deliberation. It is not provably false. Instead, the overwhelming record shows that the NPDB report accurately reflects Defendant's action (although an issue of material fact surrounds Defendant's consideration of Plaintiff's disability—see below).

Because there is no issue of material fact as to the NPDB report's falsity, the Court need not analyze Defendants' knowledge of falsity. Defendant's motion should be granted as to the claim for defamation.

**B. WLAD claim (Count II)**

Plaintiff alleges disparate treatment based on his disability in violation of the WLAD. In analyzing discrimination claims brought under the WLAD, codified at RCW 49.60, Washington courts have adopted the three-part burden shifting scheme from *McDonnell Douglas Corp. v. Green.* Under the *McDonnell Douglas* scheme, the plaintiff first must establish a prima facie case. Then the burden of production shifts to the defendants to produce a nondiscriminatory reason for the employment decision, and then back to the plaintiff to show that the nondiscriminatory reason offered is actually pretext. *Allison v. Hous. Auth. of City of Seattle,* 118

Wn.2d 79, 88–89 (1991). "Pretext" means that the reason proffered (1) has no basis in fact, (2) was not really the motivating factor for the decision, or (3) was not a motivating factor for other employees in similar circumstances. *Marin v. King Cty.*, 194 Wn. App. 1019 (2016)

To present a prima facie case for a disparate treatment case of disability discrimination, a plaintiff must establish that he was 1) disabled; 2) doing satisfactory work; 3) subject to an adverse employment action; and that 4) the adverse employment action occurred under circumstances that raise a reasonable inference of unlawful discrimination. *Anica v. Wal-Mart Stores, Inc.*, 120 Wn. App. 481, 488 (2004).

Plaintiff has met his *prima facie* burden. Defendant does not dispute elements one and three, conceding that Plaintiff was "disabled" and that denying medical privileges is an "adverse employment action." Regarding the second element, which concerns the quality of Plaintiff's work, or as applied here, the sufficiency of Plaintiff's qualifications, Defendant argues that Plaintiff has not shown that he was qualified for medical privileges, because, *inter alia*, Plaintiff had limited clinical experience, Plaintiff had been terminated after three months from his only other post-residency job, and Plaintiff could not establish clinical competency after a 20-month gap in practice. Dkt. 71 at 18-20. However, Plaintiff's burden element is satisfied under circumstances where Defendant provisionally hired Plaintiff as a hospitalist. Although Defendant later revoked and denied full medical privileges after further consideration of Plaintiff's application, it stands to reason that, at a minimum, Plaintiff could have possessed the requisite education and experience to be granted full privileges, otherwise Defendant would not have given Plaintiff the temporary appointment.

Regarding the fourth element, Defendant argues that Plaintiff has made no showing that medical privileges were denied because of Plaintiff's disability, given the other deficiencies

Plaintiff's application. The record shows extensive discussion about Plaintiff's disability at every stage of Plaintiff's application appeal, from the initial interview with Drs. DeLeon and Haftel to the MEC recommendation to FHS, so Plaintiff's *prima facie* burden is satisfied.

Defendant argues that Plaintiff has not made a *prima facie* showing because there is no evidence that Defendant has treated other similarly situated employees differently, but showing disparate treatment between employees is not necessarily an essential element to the *prima facie* case. *See Anica*, 120 Wn. App. at 488. "The elements of a prima facie case for disparate treatment based on protected status are not absolute but vary based on the relevant facts." *Marin* at *5.

Next, the Court considers whether Defendant has met its burden to show a legitimate, nondiscriminatory reason for the denial of medical privileges, which it has done. Defendant points to several reasons for the denial of medical privileges, such as Plaintiff's limited hospitalist experience of only three months, the opinion of Plaintiff's psychiatrist that Plaintiff may have difficulty working as a nocturnal hospitalist due to the unusual sleep shift schedule, and questions raised about Plaintiff's competency based on his residency at the Mayo Clinic. Dkt. 71 at 20. These are substantiated by the record and satisfy Defendant's burden.

Finally, the Court considers whether Plaintiff has met the burden to show that Defendant's reason for the denial of medical privileges was based on pretext. Plaintiff has met the burden, because again, the record shows that Plaintiff's bipolar disorder was at least a factor in Defendant's decision to deny medical privileges at every stage of Plaintiff's application. For example, after the RCC's initial revocation of Plaintiff's privileges, in a letter to Plaintiff from Dr. Dempster, the RCC requested "further information," including "a psychiatric examination and assessment, for the purpose of evaluating the applicant's ability to practice." Dkt. 80-11 at 2.

*See also*, *id*. at 3-12. Correspondence between Plaintiff and members of the RCC and MEC also refer directly to Plaintiff's disorder. Defendant argues that consideration of Plaintiff's bipolar disorder was justified, but this argument only reinforces the conclusion that issues of fact remains as to the circumstances surrounding the denial of medical privileges.

Defendant's motion should be denied as to the WLAD claim to the extent Plaintiff's claim alleges discrimination based on disability, but it should be granted as to alleged discrimination based on national origin and race.

**C. Rehabilitation Act claim (Count III)**

Plaintiff alleges discrimination based on his disability status in violation of the Rehabilitation Act. Dkt. 18-1 at ¶29. *See* 29 U.S.C. § 794:

> No otherwise qualified individual with a disability in the United States, as defined in section 705(20) of this title, shall, *solely by reason of her or his disability*, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance[.]

29 U.S.C. § 794(a) (emphasis added). The plaintiff bears the initial burden to make a prima facie showing that (1) Plaintiff has a "disability," (2) was otherwise qualified for the position sought, (3) was excluded from the position solely[1] by reason of the disability, and (4) the position sought is part of a program that receives federal financial assistance. *Smith v. Barton*, 914 F.2d 1330, 1338 (9th Cir. 1990). *See Weinreich v. Los Angeles Cty. Metro. Transp. Auth.*, 114 F.3d 976, 978 (9th Cir. 1997). Cir.1996).

---

[1] Some cases recite a broader element that would allow a plaintiff to show that an adverse action was taken "because of" the plaintiff's disability, which tracks language in Title VII. *Walton v. U.S. Marshals Service*, 492 F.3d 998, 1005 (9th Cir. 2007). However, including "solely by reason of the disability" is consistent with (1) the plain text of Section 504, which differs from Title VII, (2) the Ninth Circuit's ADA jury instructions, and (3) multiple cases that recite these elements *pro forma*.

Defendant does not dispute that Plaintiff has a disability or that the hospitalist position is connected to federal financial assistance, but Defendant contends that Plaintiff cannot make a showing as to element two, that Plaintiff was "otherwise qualified," or for element three, that Plaintiff was excluded "solely by reason of" the bipolar disorder. Dkt. 82 at 5.

To support his showing that he was "otherwise qualified," element two, Plaintiff points to the hospitalist position at Mayo Clinic and the temporary medical privileges extended by Defendant. As to element three, Plaintiff somewhat confusingly states that "to establish a prima facie case . . . a plaintiff must produce evidence that . . . he was discriminated against solely on the basis of his disability," but later argues that Defendant's "solely by reason of disability" argument is misleading. Dkt. 78 at 24, 26. Plaintiff appears to believe that a showing of pretext overcomes the need to make the showing that discrimination was done solely based on disability, but Plaintiff cites no binding precedent. *Id*.

Plaintiff has made a sufficient showing as to element two, that he was otherwise qualified for the medical hospitalist position, because, as discussed with relation to the WLAD claim above, he was sufficiently qualified to be given temporary medical privileges. Plaintiff has not, however, made a showing as to element three, that he was discriminated against solely on the basis of his disability. Instead, the record is replete of correspondence between administrators and formal letters to Plaintiff that repeatedly and universally point to multiple reasons for the denial of medical privileges. In fact, Plaintiff's deposition reveals as much, where Plaintiff testified to answering interview questions on a multiplicity of topics. Dkt. 81-2 at 15-18. No trier of fact could find for Plaintiff as to this element.

Because the claim is resolved by considering Plaintiff's *prima facie* showing, the Court need not engage in *McDonnell Douglas* burden shifting. Defendant's motion should be granted as to this claim.

IV. ORDER

THEREFORE, it is HEREBY ORDERED that Defendant Franciscan Health System's Motion for Summary Judgment (Dkt. 71) is GRANTED IN PART and DENIED IN PART as follows:

Defamation claim (Count I): Granted. This claim is DISMISSED.

Washington Law Against Discrimination claim (Count II): Granted as to alleged discrimination based on race and national origin and DISMISSED to that extent, but denied as to alleged discrimination based on disability.

Rehabilitation Act claim (Count III): Granted. This claim is DISMISSED.

Title VI claim (Count IV): Granted. This claim is DISMISSED.

The Clerk is directed to send uncertified copies of this Order to all counsel of record and to any party appearing *pro se* at said party's last known address.

Dated this 15th day of August, 2016.

ROBERT J. BRYAN
United States District Judge